# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LYDIA JEAN MATCHIE,

    *Plaintiff*,

vs.

MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

Case No. 11-1105-EFM

## MEMORANDUM AND ORDER

Plaintiff Lydia Jean Matchie ("Plaintiff") seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. Plaintiff claims that the Commissioner failed to assess the appropriate weight to Plaintiff's treating physician's opinions, and erred in determining a Residual Functioning Capacity ("RFC") that is not supported by the substantial evidence of record. Because the Court finds the Commissioner's decision was not supported by substantial evidence, the Court reverses and remands the case to the Commissioner.

**I.**     **Plaintiff claims that she has been entitled to benefits since September 18, 2007.[1]**

Plaintiff provides extensive detail with regard to her impairment, which she states began as

---

[1] This section describes Plaintiff's medical history as represented in her brief (Doc. 10). Further evidence was considered by the ALJ, which is described in Section IV.

cognitive impairments. She states that they first began with her enrollment in special education classes when she was in the 5th grade. In 8th grade, she was diagnosed with Borderline Intellectual Functioning. She claims that she continued to struggle, and underwent testing in the 11th grade that placed her Verbal IQ score at 70. She dropped out of high school. Later, Plaintiff attempted to get State assistance. She was told that she needed to have her IQ evaluated to receive assistance, but the record does not indicate that she did so.

Plaintiff alleges that her physical impairments began in 2006 and 2007. Dr. Pruiksma appears to have been Plaintiff's primary source of care during the relevant time period. From approximately 2007 to 2009, Plaintiff sought treatment from Dr. Pruiksma for a variety of pains: lower back pain; pain, swelling, and tingling in her hands; bilateral upper extremity pain (pain in both arms); neck pain; and varied muscle pain with trigger points on her back, triceps, rhomboids, shoulders, deltoids, and epicodyles. Dr. Pruiksma ordered testing and prescribed Plaintiff increasing levels of pain medication and treatments, such as Tramadol, Flexeril, Gabapentin, Fentanyl, Ibuprofen, alternating hot and cold, wrist braces, and reduced activity. In the course of his treatment, Dr. Pruiksma diagnosed Plaintiff with mild degenerative changes in her spine, cervical radiculopathy, and fibromyalgia or a type of myofascial pain syndrome. He also referred her to other physicians for additional evaluation.

Plaintiff saw Dr. Schmidt, who worked with her to rehabilitate her upper extremities after bilateral ulnar nerve transposition. She was released from his care on January 17, 2007. Dr. Pruiksma referred Plaintiff to Dr. Sankorrikal for a second opinion on Plaintiff's bilateral upper extremity pain, whom she saw during 2007 and 2008. Dr. Sankoorikal found that Plaintiff might

have carpal tunnel syndrome bilaterally, tendinitis of the wrist/triceps, and myofascial pain syndrome in her upper trapezius and intrascapular area.

Plaintiff alleges that she left her job on August 29, 2007, because of the strain on her arms despite wrist splints and medication.

In May of 2008, Plaintiff sought the expertise of Dr. Veloor (a consultive doctor) to evaluate her conditions. Dr. Veloor concluded that Plaintiff had weak bilateral grip strength, possible tendinitis in both wrists and arms, and a limited ability to grip, lift, and carry items frequently.

Following Dr. Veloor's evaluation, a single decision maker ("SDM") for the SSA found that Plaintiff's primary diagnoses was carpal tunnel syndrome with tendinitis, limiting Plaintiff to a sedentary RFC—which involves lifting no more than 10 pounds at a time.[2] The SDM's restrictions regarding manipulative limitations were unclear because he indicated that Plaintiff had unlimited ability, but also included a note that Plaintiff should not make rapid, repetitive hand movements. The SDM's assessment was confirmed by Dr. Siemsen, another doctor who examined Plaintiff.

Plaintiff continued to experience pain and varied symptoms, and on November 28, 2008, Dr. Pruiksma completed a statement summarizing Plaintiff's functional abilities. He stated that she was at a sedentary level of functioning and should not perform work that would require repetitive use of her arms, walking, or lifting. On October 25, 2009, he completed a Medical Source Statement-Physical, opining that Plaintiff was limited to a sedentary work environment, could lift no more than 10 pounds occasionally and less than 5 pounds frequently, should not sit or stand for longer than 15 minutes without a break, was limited in her ability to push, pull, and handle, and was subject to other

---

[2] 20 C.F.R. § 1567(a).

environmental and postural restrictions.

## II. Plaintiff's application for benefits was denied.

Plaintiff filed her application for benefits on March 17, 2008. The Social Security Administration denied her claims first on May 22, 2008, and again upon reconsideration on July 23, 2008. She appeared for a hearing in from of an administrative law judge ("ALJ"), who denied her applications on December 23, 2009. She requested a review of the hearing on January 13, 2010, and the Appeals Council denied Plaintiff's request for a new hearing on February 23, 2011. Therefore, Plaintiff exhausted all of her administrative remedies before filing this review.

## III. The Commissioner's findings are conclusive, so long as they are supported by substantial evidence.

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[4] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[5] However, the Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial

---

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

evidence.[6]  Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[7]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[8]

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.[9]  The claimant bears the burden during the first four steps.[10]  In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and she has a medically severe impairment or combination of impairments.[11]  "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits."[12]  If, however, a claimant does not establish an impairment at step three, the process continues.  The Commissioner assesses a claimant's RFC, and at step four, the claimant must demonstrate that her impairment prevents her from performing her past work.[13]  The

---

[6] *Wall,* 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[7] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citation omitted).

[8] 42 U.S.C. § 1382c(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A).

[9] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 404.1520(a).

[10] *Lax*, 489 F.3d at 1084.

[11] *Id.* (citations omitted).

[12] *Id*.

[13] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[14] .[15]

## IV. The Commissioner found that Plaintiff was able to perform her past relevant work, and was therefore not disabled under the Social Security Act.

In his written decision, the ALJ found the following for steps one through three:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.  2. The claimant has not engaged in substantial gainful activity since September 18, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).  3. The claimant has the following severe impairments: (1) Elbow tendinitis, status post ulnar transposition surgeries, and (2) Myofascial pain syndrome/fibromyalgia (20 CFR 404.1520(c) and 416.920(c)). . . . 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[16]

At steps four and five, the ALJ found that "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1527 and 416.967(b)."[17]  The ALJ stated that Plaintiff is "capable of performing past relevant work as a (1) cleaner/housekeeping, light work, SVP2, and (2) laundry worker II, medium work, SVP2.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and

---

[14] *Lax*, 489 F.3d at 1084; 20 C.F.R. § 416.920(a)(4)(v).

[15] *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

[16] Doc. 9-2, pp. 14-15.

[17] *Id.* at p. 15.

416.965)."[18] He found that Plaintiff was therefore not disabled under the Social Security Act.

## VI. The ALJ assigned partially limited and partially significant weight to Dr. Pruiksma's opinion.

In making his findings, the ALJ went through a detailed description of the evidence presented and the weight he assigned it. The Court will only address the ALJ's consideration of Dr. Pruiksma—Plaintiff's treating physician—because that consideration is dispositive of the Court's inquiry.

Dr. Pruiksma stated that Plaintiff's pain was such that he did not believe she could perform a job that would "take clarity of thought or use of her arms or legs."[19] The ALJ cited the following statements from Dr. Pruiksma's Medical Source Statement:

> Claimant can lift and or carry less than 5 pounds frequently and 10 pounds occasionally. The claimant can stand and or walk for 15 minutes without a break, but it is unknown how long the claimant can stand and or walk throughout an 8 hour day. The claimant has limited abilities to push and or pull. The claimant should never climb, balance, stop, kneel, crouch, crawl, and should avoid any exposure to hazards and heights. The claimant should only occasionally reach, handle and finger. The claimant can frequently feel, see, speak and hear. If the claimant suffers pain, it is unknown whether as to whether or not there is a need to lie down or recline to alleviate symptoms during an 8 hour day. The claimant's pain, use of medication, or side effects of medication does not cause a decrease in concentration, persistence or pace or any other limitations. In responding, Dr. Pruiksma, excluded from all consideration, all limitations which he believed resulted from the claimant's conscious malingering symptoms. He also excluded from consideration all limitations which he believed resulted from the claimant's drug addition and or alcoholism.[20]

---

[18] *Id.* at p. 20.

[19] *Id.*

[20] *Id.* at p. 18.

-7-

The ALJ assigned significant weight to Dr. Pruiksma's diagnoses, but only limited weight to the severity Dr. Pruiksma assigned to Plaintiff's impairments, their debilitating effects, and functional limitations. The ALJ explained that the "amount of pain is merely a subjective allegation of the claimant, and has not been verified by any objective testing by Dr. Pruiksma or found in the objective medical evidence of record."[21]

**V.    Substantial evidence does not evidence exist to support the ALJ's findings.**

Plaintiff argues that the ALJ should have assessed controlling weight to all of Dr. Pruiksma's opinion, but that he only assessed controlling weight to portions of the opinion. Because the ALJ did not assess the required controlling weight to Dr. Pruiksma's opinions, Plaintiff contends that the ALJ was required to give good reasons for not doing so. Plaintiff states that the ALJ failed to do so, and therefore did not perform the proper analysis.

An ALJ must give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."[22]  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."[23]  "If the treating source opinion is not given controlling weight, the inquiry does not end."[24] A treating source opinion is "still entitled

---

[21] Doc. 9-2, p. 18.

[22] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p).

[23] *Id.*

[24] *King v. Astrue*, 2012 WL 1231836, *5 (D. Kan. April 12, 2012) (quoting *Watkins*, 350 F. 3d at 1300).

to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."[25] Those factors are:

> (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[26]

After considering the factors, the ALJ must give reasons for the weight he gives the treating source opinion.[27] If the ALJ completely rejects the opinion, he must provide "specific, legitimate reasons."[28]

In this case, the ALJ did not go through the proper "controlling weight" analysis with respect to Dr. Pruiksma's opinion. The ALJ did not state whether he assessed Dr. Pruiksma's opinion "controlling weight;" however, one could likely presume from the written decision that the ALJ declined to give Dr. Pruiksma's opinion controlling weight, and decided to give part of it significant weight and part of it limited weight instead. Further, he did not actually discuss the factors set forth in 20 C.F.R. § 404.1527 and 416.927. Even assuming it would be sufficient for the ALJ to merely consider the factors (but not discuss that analysis) and then state the weight he gives the opinion, the benefit of the doubt will still not save his decision. The ALJ fails to adequately provide good

---

[25] *Watkins,* 350 F.3d at 1300.

[26] 20 C.F.R. §§ 404.1527(d)(2–6), 416.927(d)(2–6); *see also Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

[27] *King*, 2012 WL 1231836 at *5 (citing *Watkins,* 350 F.3d at 1301).

[28] *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir.1996).

reasons for the weight he assigned Dr. Pruiksma's opinion—he merely stated that Dr. Pruiksma's evaluation of Plaintiff's pain was based on her subjective complaints that have not been verified by any objective tested or found in the objective medical evidence of record. Substantial evidence does not exist to support such a finding—it appears Dr. Pruiksma did refer Plaintiff for objective testing, and that Dr. Pruiksma and the physicians he referred Plaintiff to relied on that testing to make their findings. An ALJ may not properly discount a treating physician's opinion simply based on the speculation that the opinion is based on a claimant's subjective complaints.[29] While an ALJ may properly discount a treating physician's weight on the basis that it is unsupported by objective medical evidence, the ALJ did not provide sufficient analysis to do so in this case. In *Scott v. Barnhart*,[30] for example, the ALJ did not give controlling weight to the treating physician's opinion because he found it was "not supported by objective medical findings" and was "inconsistent with specific objective clinical and laboratory findings."[31] However, in *Barnhart*, the Tenth Circuit found that the ALJ gave "numerous, specific, and legitimate reasons for this finding," which were supported by the record.[32] Further, the court found that the "ALJ adequately considered the *Watkins* [20 C.F.R. § 404.1527 and § 416.927] factors in his decision" because he "discussed the length of

---

[29] *Cook v. Astrue*, 554 F.Supp.2d 1241, 1246-47 ("'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports.' *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002). . . . [W]here the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of *McGoffin*.").

[30] 123 Fed.Appx. 962 (10th Cir. 2005).

[31] *Id*. at 964.

[32] *Id.*

-10-

plaintiff's treatment relationship with Dr. Butcher, as well as the nature and extent of that relationship. He thoroughly discussed the degree to which Dr. Butcher's opinions were not supported by relevant evidence, as well as the inconsistencies between Dr. Butcher's opinions and the record as a whole . . . ."[33] The Court finds that the ALJ here failed to provide a thorough and thoughtful analysis in his decision, and this flaw is fatal. Accordingly, the judgment is reversed and remanded for further review consistent with this order.[34]

**IT IS ACCORDINGLY ORDERED** that the judgment of the Commissioner is **REVERSED** and **REMANDED**.

**IT IS SO ORDERED.**

Dated this 24th day of May, 2012, in Wichita, Kansas.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[33] *Id.*

[34] Because the Court finds that the ALJ did not go through the requisite analysis with respect to the treating physician's opinion, it is unnecessary for the Court to consider the Plaintiff's claims regarding the RFC.